UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>SUNRISE RIDGE MASTER<br>HOMEOWNERS ASSOCIATION, et al.,<br><br>Defendants. | Case No. 2:16-cv-00381-JCM-PAL<br><br>ORDER |

Presently before the court is Meadow Foxtail Drive Trust, Saticoy Bay, LLC, Series 3984 Meadow Foxtail Drive ("Saticoy"), and Paradise Harbor Place Trust's motion for summary judgment. (ECF No. 35). Plaintiff Bank of America, N.A. ("BANA") filed a response (ECF No. 38), and these defendants filed a reply (ECF No. 45).

Also before the court is BANA's motion for summary judgment. (ECF No. 36). Defendant Sunrise Ridge Master Homeowners Association (the "HOA") filed a response (ECF No. 40), as did the other defendants (ECF No. 41). BANA filed a reply. (ECF No. 46).

Also before the court is the HOA's motion for summary judgment. (ECF No. 37). BANA filed a response (ECF No. 39), and the HOA filed a reply (ECF No. 44).

**I.  Introduction**

This action involves the foreclosure and sale of the real property at 3984 Meadow Foxtail Drive, Las Vegas, Nevada. (ECF No. 1). Plaintiff confirms that the HOA recorded a notice of delinquent assessment lien on August 31, 2010. (*Id.*). Next, plaintiff indicates that the HOA recorded a notice of default and election to sell on November 9, 2010. (*Id.*). Finally, the HOA

recorded a notice of trustee's sale on June 21, 2011.  (*Id.*).  Plaintiff alleges that the amount owned on each of these notices did not specify the superpriority lien amount owed.  (*Id.*).

Plaintiff contends that it offered to tender the super-priority lien amount to the HOA, based upon its own calculations, and that the HOA rejected the $378.00 offered amount.  (*Id.*).  The relevant tender letter indicated that the offer amount was "non-negotiable" and that "any endorsement of [the] cashier's check . . . will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that . . . financial obligations towards the HOA . . . have now been 'paid in full.'"  (ECF No. 1-1 at 5).

Plaintiff's complaint alleges four claims: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against the HOA and Nevada Association Services ("NAS"); (3) wrongful foreclosure against the HOA and NAS; and (4) injunctive relief against Saticoy.  (ECF No. 1).

Specifically, plaintiff supports its quiet title/declaratory judgment claim by arguing that NRS Chapter 116 violates BANA's procedural due process right, the recorded notices vaguely described the super-priority amount owed on the HOA lien, tender for the HOA lien was improperly rejected, and by challenging the foreclosure sale buyers' *bona fide* purchaser statuses.  (*Id.*).

On March 17, 2016, Saticoy filed a counterclaim to quiet title in the property and to request declaratory relief.  (ECF No. 8).  Both the HOA and the other defendants' respective motions for summary judgment seek a finding that the sale extinguished plaintiff's interest in the property.  (ECF Nos. 35, 37).

On March 10, 2017, this court dismissed plaintiff's second and third claims while also barring plaintiff's request for attorneys' fees as special damages.  (ECF No. 51).  Therefore, only the opposing claims for quiet title and plaintiff's claim for injunctive relief remain in this case.  *See* (ECF Nos. 1, 51).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,

809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

### III. Discussion

As an initial matter, the court dismisses, without prejudice, claim four because the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal–Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action."). This court proceeds, considering the motions for summary judgment as they relate to quiet title.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

/ / /

/ / /

4

### *1.    Deed recitals*[1]

Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect when the events giving rise to this litigation occurred.

[2] The statute further provides as follows:

5

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the record contains the notice of delinquent assessment lien (ECF No. 36-3), the notice of default and election to sell (ECF No. 36-4), and the notice of foreclosure sale (ECF No. 36-5). Notably, BANA's assignment of deed of trust was recorded on September 29, 2011, which is roughly three months after the notice of foreclosure sale was recorded. *Compare* (ECF No. 36-5) *with* (ECF No. 36-2). Furthermore, the recorded foreclosure deed contains statements indicating its compliance with the proper foreclosure procedure. *See* (ECF No. 36-7).

Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See Shadow Wood*, 366 P.3d at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle defendants to success on the quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting the contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title).

---

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Thus, the question remains whether BANA has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*. (citations omitted).

### *2. Rejected tender*

BANA argues that the tender of its computation of the superpriority amount eliminated the HOA's superpriority lien prior to the foreclosure sale. (ECF No. 36). BANA maintains that its interest in the property therefore survives the foreclosure sale. (*Id.*).

The court disagrees. BANA did not tender the amount sent forth in the notice of default, which stated an amount due of $2,078.00. (ECF No. 36-4). Rather, BANA tendered a lesser amount, the amount it calculated to be sufficient—specifically, $378.00. (ECF No. 36-6).

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

BANA merely presumed, without adequate support, that the amount set forth in the notice of default included more than the superpriority lien portion and that a lesser amount based

7

on BANA's own calculations would be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

The notice of default recorded November 9, 2010, set forth an amount due of $2,078.00. (ECF No. 36-4). Rather than tendering the $2,078.00 due so as to preserve its interest in the property and then later seeking a refund of any difference, BANA elected to pay a lesser amount ($378.00) based on its unwarranted assumption that the amount stated in the notice included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BANA paid the amount set forth in the notice of default ($2,078.00), the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

After failing to use the legal remedies available to BANA to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—BANA now seeks to profit from its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

In presuming that a mere offer to pay constitutes a "tender" of payment, BANA cites to *Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 382 P.3d 911 (Nev. 2016), for the proposition that an offer to pay the superpriority amount prior to the foreclosure sale preserves

8

the lender's deed of trust. (ECF No. 36 at 5–8).

The *Stone Hollow* court, however, made no such holding. To the contrary, the *Stone Hollow* court held that "[w]hen rejection of a tender is unjustified, the tender is effective to discharge the lien." 382 P.3d at 911. BANA has not set forth any evidence as to a tender in a sufficient amount.

Based on the foregoing, BANA has failed to sufficiently establish that it tendered a sufficient amount prior to the foreclosure sale so as to preserve its interest in the property.

### 3. *Procedural due process*

BANA next argues that the HOA lien statute is facially unconstitutional because it "did not mandate notice to mortgagees prior to its recent amendment." (ECF No. 36 at 9). BANA further posits that any factual disputes regarding actual notice are irrelevant pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"); *see also* (ECF No. 36).

In that case, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

BANA has failed to show that it was entitled to any notice as it was not assigned the deed of trust until after notice of the foreclosure sale had been recorded. Specifically, plaintiff notes that the notice of trustee's sale was recorded on June 21, 2011. (ECF No. 36-5). However, the deed of trust was assigned to BANA via assignment of deed of trust, which was recorded on

9

September 29, 2011. (ECF No. 36-2). Moreover, BANA's attempted tender shows that it was fully aware that there was a superior interest on the property at issue. (ECF No. 36). Accordingly, BANA's due process argument fails as a matter of law.

### 4. *Retroactivity*

BANA next argues that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 36).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"); *see also Great N. Ry. Co. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 364 (1932) ("A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward."). Thus, *SFR Investments* applies to this case.

### 5. *Equitable relief*

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 858 (D. Nev. Apr. 29, 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Shadow Wood*, 366 P.3d at 1112; *see also Long v. Towne*, 639 P.2d 528 (Nev. 1982).

Here, BANA argues that, according to *Shadow Wood*'s adoption of the Restatement approach, "a grossly inadequate price itself is the proof of unfairness required to set aside a foreclosure sale." (ECF No. 36 at 14).

The *Shadow Wood* court makes no such holding. Furthermore, no language exists in *Shadow Wood* that exhibits the Nevada Supreme Court's intention to adopt the Restatement. *Compare Shadow Wood*, 366 P.3d at 1112 (citing the Restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 191 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); and *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).

Because Nevada courts have not adopted the relevant section(s) of the Restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530. In light of the above discussion of improper tender, BANA cannot show that it suffered from defendants' inequitable actions.

Next, BANA claims evidence that the CC&Rs represented to the public that the HOA lien would be subordinate to the first deed of trust, which it asserts "necessarily chilled bidding and resulted in unfairness." (ECF No. 36 at 15). BANA cites to this court's decision in *ZYZZX2 v. Dizon*, No. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016), to support its argument.[3]

This court's decision in *ZYZZX2* was rendered in light of the combination of a mortgage protection clause and an HOA's misleading mailings. *See ZYZZX2*, 2016 WL 1181666 at *4–5 ("The association sent a letter to Wells Fargo and other interested parties stating that its foreclosure would not affect the senior lender/mortgage holder's lien."). Unlike in *ZYZZX2*, the events surrounding the alleged tender offer here make it clear that BANA was aware that its

---

[3] BANA makes no argument regarding fraud. *See* (ECF No. 36).

11

interest in the property was at risk. *See id.*; *see also* (ECF No. 36-6 at 15) (attempting, although inadequately, "to satisfy . . . obligations to the HOA.")

Moreover, NRS 116.1104 provides that "[e]xcept as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived." Nev. Rev. Stat. § 116.1104; *see also Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the reasoning in *ZYZZX2*); *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1168 (D. Nev. 2016) (holding that an HOA's failure to comply with its CC&Rs does not set aside a foreclosure sale, due to NRS 116.1104).

It has generally been accepted in the United States' jurisprudence that individuals know the law. *See, e.g.*, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 625 (2010). Accordingly, this court will presume here that those examining CC&Rs in preparation to bid on a property are aware of NRS 116.1104. Thus, BANA's present lack of evidence showing that bidders were dissuaded from attempting to purchase the property as well as its actual knowledge that its interest was threatened forecloses this argument.

### IV.  Conclusion

In sum, BANA has failed to show that it is entitled to summary judgment on its claim for quiet title. Thus, this court sees no need to upset the current status quo regarding defendants' interests in the underlying property.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for summary judgment (ECF No. 36) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' motions for summary judgment (ECF Nos. 35, 37) be, and the same hereby are, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED THIS 5th day of May, 2017.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE